UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHERIN AHMED,

               Plaintiff,

       – against –

ASTORIA BANK F/K/A ASTORIA
FEDERAL SAVINGS AND LOAN
ASSOCIATION and MAUREEN RUSSO,
*individually and in her official capacity and
as aider and abettor*,

           Defendants.

**MEMORANDUM & ORDER**
14-CV-4595

| **Parties** | **Appearances** |
| --- | --- |
| **Sherin Ahmed** | **Tahanie A. Aboushi**<br>The Aboushi Law Firm, PLLC<br>1441 Broadway, Suite 5036<br>New York, NY 10018<br>212-391-8500<br>Fax: 212-391-8508<br>tahanie@aboushi.com |
| **Astoria Bank F/K/A Astoria Federal Savings and Loan Association**<br><br>**Maureen Russo** | **Mark S. Mancher**<br>**Kimberly Natalie Dobson**<br>Jackson Lewis P.C.<br>58 South Service Road, Suite 250<br>Melville, NY 11747<br>631-247-0404<br>Fax: 631-247-0417<br>mancherm@jacksonlewis.com<br>dobsonk@jacksonlewis.com |

**Jack B. Weinstein, Senior United States District Judge:**

**Table of Contents**

I.    Introduction ..................................................................................................................... 1

II.   Procedural History ........................................................................................................ 2

III.  Factual Background ...................................................................................................... 4

    A.  Relevant Individuals ............................................................................................... 4

    B.  Plaintiff's Hiring and Orientation ......................................................................... 5

    C.  Alleged Discrimination ........................................................................................... 7

    D.  Termination ............................................................................................................. 8

IV.   Law .............................................................................................................................. 12

    A.  Summary Judgment Standard .............................................................................. 12

    B.  Title VII ................................................................................................................. 13

        1.  Disparate Treatment ....................................................................................... 13

        2.  Retaliation ....................................................................................................... 15

        3.  Hostile Work Environment ............................................................................. 18

    C.  42 U.S.C. § 1981 ..................................................................................................... 20

    D.  State Claims ........................................................................................................... 21

V.    Application of Law to Facts ......................................................................................... 22

    A.  Disparate Treatment ............................................................................................. 22

    B.  Retaliation .............................................................................................................. 23

    C.  Hostile Work Environment ................................................................................... 23

VI.   Conclusion .................................................................................................................. 24

## I.      Introduction

Plaintiff believed she was discriminated against and fined because of her religion and national background.  The objective facts show no reasonable basis for that belief.

Sherin Ahmed commenced this suit against Astoria Bank and Maureen Russo ("Defendants") after she was terminated from her employment at Astoria Bank, at the end of her

probationary period, for tardiness and carelessness in checking important documents.  She

believes she was subjected to discrimination and unlawful termination because she was a Muslim

of Egyptian and Arabic heritage: employees commented in her presence about "Arabic terrorists"

and Arabic women covering their heads; she was denied a day off for a religious holiday; and her

employment was terminated on the pretext of inadequate "performance."  She contends that she

had not been informed of performance issues, and received no warnings or discipline prior to

termination.  *See generally*, Compl., Aug. 1, 2014, ECF No. 1.

Defendants take the position that plaintiff lost her job because she failed to satisfactorily

complete her three-month orientation period, she repeatedly underperformed, and she did not

improve after she was made aware of her shortcomings by her supervisor, Maureen Russo

("Russo").

Defendants move for summary judgment.  Their motion is granted.

## II.     Procedural History

Plaintiff filed a formal administrative complaint with the Equal Employment Opportunity

Commission ("EEOC") on February 18, 2014.  The complaint alleged unlawful discrimination in

employment by Russo and Astoria Bank.  Defs.' Statement of Uncontested Facts Pursuant to

56.1, Feb. 5, 2016, ECF No. 44-8 ("Defs.' 56.1"), at ¶ 1; Aff. of Mark S. Mancher in Supp. of

Defs.' Mot. for Summ. J., Dec. 24, 2015, ECF No. 44-1 ("Mancher Aff."), at Ex. 1 (Charge of

Discrimination).  The EEOC issued a "Right to Sue" letter on May 29, 2014.  *See* Compl., Aug.

1, 2015, ECF No. 1, at Ex. A (Right to Sue Letter).

She filed her court complaint on August 1, 2014.  It alleges violations of her rights under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII"), New York

Executive Law § 296, *et seq.* ("NYSHRL"), and New York City Administrative Code § 8-107, *et*

*seq.*  Plaintiff claimed discrimination based on race, national origin and religion, and retaliation

by discharge. Compl., Aug. 1, 2014, ECF No. 1. Defendants filed an answer denying the allegations. Answer to Compl., Sept. 16, 2014, ECF No. 10.

Plaintiff's claims under the New York City Administrative Code were dismissed on consent of the parties. Stipulation of Dismissal, Sept. 18, 2014, ECF No. 11; Order, Sept. 30, 2014, ECF No. 12. She filed an amended complaint, adding a new claim of race discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981"), and reasserted the New York City Human Rights Law claims that had been dismissed. Am. Compl., Dec. 17, 2014, ECF No. 20. By stipulation, the parties again agreed to dismiss the New York City Human Rights Law claims, with prejudice. Stipulation of Dismissal, Jan. 16, 2015, ECF No. 23; Order, May 8, 2015, ECF No. 28. Defendants filed an answer denying the allegations. Answer to Am. Compl., Jan. 26, 2015, ECF No. 24.

The case was referred to the magistrate judge for court-annexed mediation. Order, Apr. 16, 2015, ECF No. 26. The parties were unable to resolve the dispute. *See* Status Report, July 8, 2015, ECF No. 34.

Plaintiff then filed a motion seeking leave to file a second Amended Complaint (erroneously entitled "Third Amended Complaint"); the new complaint added Anthony Figeroux as a defendant. Pl.'s Letter-Mot. to Correct/Amend/Suppl., July 9, 2015, ECF No. 36 ("Pl.'s Mot. to Amend"). Defendants filed a letter in opposition. Defs.' Resp. in Opp. to Pl.'s Mot., July 13, 2015, ECF No. 37. The magistrate judge denied plaintiff's motion because plaintiff lacked good cause. Order, July 16, 2015, ECF No. 40. No appeal was taken from this order.

Plaintiff's remaining claims are: (1) national origin, race and religious discrimination (including hostile work environment) by the Bank pursuant to Title VII and the NYSHRL; (2) retaliation by the Bank pursuant to Title VII and the NYSHRL; (3) race discrimination by the

Bank pursuant to Section 1981; and (4) individual liability for 'aiding and abetting' by Russo pursuant to the NYSHRL.  Defs.' 56.1 at ¶ 15.

An evidentiary hearing was conducted on March 21, 2016.  *See* Hr'g Tr., Mar. 21, 2016.  The court ordered representatives of the bank with knowledge of the events and the individual defendants and plaintiff to appear.  Scheduling Order, Feb. 25, 2016, ECF No. 47.  Plaintiff did not appear, but the bank's representative and individual defendants did.  *See* Hr'g Tr., Mar. 21, 2016, at 1:10-2:4.  Undisputed evidence at the hearing supported the information already submitted on the motion demonstrating that plaintiff could not prove her claims.  *See generally, id.*

## III.    Factual Background

### A.    Relevant Individuals

Plaintiff Sherin Ahmed, formerly a citizen of Egypt, immigrated to the United States and was naturalized in 2001.  She is a Muslim who wears a hijab head covering.  Decl. of Sherin Ahmed, Jan. 22, 2016, ECF No. 45-2 ("Ahmed Decl."), at ¶ 1.

Defendant Astoria Bank operates in Kings, Queens, Nassau and Suffolk counties.  Defs.' 56.1, at ¶ 16.

Defendant Russo was Astoria Bank's Assistant Vice-President, Multi-Family Commercial Lending – Quality Control Manager.  She has held that position for one and a half years.  In this position Russo managed the day-to-day operations of the Quality Control division of Astoria Bank's Multi-Family Commercial Lending department.  *Id.* at ¶ 23.  She was plaintiff's direct supervisor.  *Id.* at ¶ 51.  Other relevant witnesses include the following employees:

- Anthony Figeroux, First Vice President, Director, Regulatory Compliance, *id.* at ¶ 24;

- Karen DiSunno, Senior Human Resources Generalist, *id.* at ¶ 25;

- Haider Mohamed, Supervisor of Payoff and Customer Service, *id.* at ¶ 26;

- Kathy Mitchell, Manager in the Loan Servicing department, *id.* at ¶ 27;

- Mohammad Jamal, Senior Loan Servicer, *id.* at ¶ 28; and

- Lisa Ortiz, Senior Quality Control Analyst in the Multi-Family Commercial Real Estate Lending Department – Quality Control Unit, *id.* at ¶ 29.

A number of these witnesses share plaintiff's religion. Mancher Aff. at Exs. 19 (July 31, 2015 Aff. of Haider Mohamed) and 21 (July 27, 2015 Aff. of Mohammad Jamal).

### B. Plaintiff's Hiring and Orientation

Plaintiff was scheduled to be interviewed for a Quality Control Analyst position at Astoria Bank on September 11, 2013, at 10:00 a.m., at the bank's Jericho, New York location. Defs.' 56.1, at ¶ 44. After arriving 45 minutes late, plaintiff met with Karen DiSunno and Maureen Russo. *Id.* at ¶¶ 48-50. She wore a hijab. *Id.* at ¶ 47. During the interview, Ms. DiSunno provided a brief overview of Astoria Bank's policies and procedures. *Id.* at ¶ 48. Plaintiff then met with Russo, who conducted a more comprehensive inquiry. *Id.* at ¶ 50.

After conferring with plaintiff, Russo escorted her to the servicing area where she met co-workers who had been employed with her at another bank: Mr. Mohamed, Ms. Mitchell and Mr. Jamal. Mr. Figeroux joined the group. *Id.* at ¶ 52. Plaintiff testified that Mr. Figeroux said to her and the others, "what do you guys have intentions to do, the three of you together. Thank god my office is in the other side of the building in case, just in case." *Id.* at ¶ 53. Mr. Figeroux denied making that comment and Mr. Mohamed, Mr. Jamal and Ms. Mitchell, all of whom were present, denied hearing it. *Id.*

Plaintiff was selected for the Quality Control Analyst position. *Id.* at ¶ 54. In an email to Ms. DiSunno, sent on the same day, defendant Russo indicated why plaintiff was the better of two candidates then being considered:

> I just wanted to let you know that I did interview with Raquel Ryersen this morning. Although Raquel has some QC experience, I felt that after meeting with Sherin, she would be the better candidate for what I am looking for in QC at this time.

Mancher Aff., at Ex. 26 (E-mail from Russo to DiSunno dated Sept. 11, 2013).

On September 12, 2013, Ms. DiSunno phoned plaintiff and offered the job. Defs.' 56.1, at ¶ 58. During the conversation, Ms. DiSunno told plaintiff that it was the bank's practice for new hires to undergo an "orientation period" of 90 days during which time she would not accrue any time-off. Plaintiff did not indicate any need for time-off during the 90-day period. Mancher Aff. at Ex. 12 (Dec. 22, 2015 Aff. of Karen DiSunno ("DiSunno Aff.")), at ¶ 16; *id.* at Ex. 27 (Sept. 12, 2013 e-mail from Karen DiSunno to Russo).

Ms. DiSunno confirmed the offer in an e-mail dated September 12, 2013. *Id.* at Ex. 28 (Sept. 12, 2013 e-mail from Karen DiSunno to Ahmed). It indicated that a formal welcoming letter would be mailed to plaintiff's home. *Id.* Both the e-mail and letter stated that plaintiff would have to attend an orientation session beginning at 8:15 a.m. on September 16, 2013. *Id.* at Exs. 28 and 29 (Sept. 12, 2013 letter from Karen DiSunno to Ahmed).

Plaintiff arrived late to the orientation session; she explained that she had gotten lost. She testified that she called the bank's Human Resources department to request assistance in getting to the orientation and someone from the department picked her up. *Id.* at Ex. 14 (Aug. 14, 2015 Dep. Tr. of Sherin Ahmed), at 146:6-18. Although plaintiff was supposed to return to work following the conclusion of the orientation, she did not do so. *Id.* at Ex. 15 (Dec. 24, 2015 Affidavit of Maureen Russo), at ¶ 12; DiSunno Aff., at ¶ 19.

### C. Alleged Discrimination

Plaintiff offers the following evidence of discrimination (mostly disputed by other witnesses):

- On the day of plaintiff's interview, Mr. Figeroux made a comment to plaintiff and two others of Arab or Middle Eastern ethnicity that insinuated they were all terrorists;

- On several occasions Mr. Figeroux made inappropriate jokes about plaintiff's race, ethnicity and religion, including telling plaintiff to take the "rag" off of her head, referring to her hijab, that she looked better without the hijab, and that the hijab was not appropriate for the work environment;

- Russo "singled out Plaintiff on the days she arrived late for work" by lecturing plaintiff about the importance of being on time;

- Throughout her employment with Astoria Bank, Russo would speak slowly and used gestures to communicate with plaintiff, from which plaintiff inferred that Russo thought she did not know how to speak or understand English;

- On October 11, 2013, Russo denied plaintiff's request to take off a few hours without pay on October 15, 2015, for a major Muslim holiday;

- On October 15, 2013, while at work, plaintiff told Russo that the holiday was the equivalent to Christmas and two other Muslim employees who were supervised by other managers had been given the day off, but Russo refused to allow time off;

- During the same conversation, plaintiff told Russo that in preparation for the celebration of the holiday, she sent her daughter to get her hair done. Russo stated a woman who does her hair feels amazing and she did not understand why Arabic women cover their heads. From the tone of the response, plaintiff understood it to mean that Russo was annoyed, condescending and judgmental;

- On November 8, 2013, during a conversation about plaintiff's lateness, plaintiff informed Russo that she could not use public transportation to get to the bank because she lived too far away. Plaintiff told Russo that because of public transportation she was late for her initial interview and Russo then said Ahmed's interview date, September 11, 2013, reminded her of "Arabic Terrorists and what they did to the country";

- On or about the week of November 18, 2013, Russo refused to permit plaintiff to take chocolate from a basket in Russo's office, despite having permitted Ms. Ortiz, Ms. Mitchell, Mr. Mohamed and Mr. Jamal to take the candy;

- In early December, plaintiff was reprimanded for leaving early because of inclement weather, even though Russo had given plaintiff permission to do so.

Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., Feb. 5, 2016, ECF No. 45-4 ("Opp'n Mem."), at 3-5.

### D. Termination

At the conclusion of the 90-day probation period, plaintiff was placed on suspension for failing to show employability, and discharged. Mancher Aff., at Ex. 33 (Three-Month Orientation Review). Russo explained her evaluation as including repeated instructions about the need to improve poor performance as follows:

> I have discussed with Sherin a number of times, stressing the importance of performing her duties effectively and what was *needed to improve her poor performance* and quality of work. In many instances, *she has provided wrong data* on loans closed and/or *failed to complete her work* as was expected. I feel that since her hire and training, Sherin should have grasped the requirements expected of her, however, after reviewing several loan files, *I find myself correcting errors and filling-in missing data*. I have *no alternative but to terminate* Sherin's employment effective 12/13/2013.

*Id.* (emphasis added). Plaintiff was effectively terminated as an employee. This conclusion is supported by a note from Karen DiSunno of Astoria Bank's Human Resources department on December 17, 2013: "I explained to Sherin, based on her not successfully passing her Orientation period she had the option to resign or to be terminated." *Id.* at Ex. 37 (Dec. 17, 2013 memorandum to file).

Defendants contend that plaintiff was terminated because of her substandard probationary performance. Russo testified that plaintiff "wasn't understanding the work," and that "she was making a lot of errors." *See id.* at Ex. 18 (Aug. 18, 2015 Dep. Tr. of Maureen Russo), at 45:9-46:25. She contends that plaintiff was late to work on a number of occasions, for which she was reprimanded, but that she was not reprimanded for leaving work early without permission.

Russo also stated that plaintiff would walk away from her desk to take personal phone calls. *See id.*, at 85:3-15. Upon review of plaintiff's files, Russo found "that [p]laintiff was not catching mistakes such as missing signatures, incorrect dates and missing information required pursuant to Bank policy and applicable laws, rules and regulations." Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J., Feb. 5, 2016, ECF No. 44-7 ("Defs.' Mem."), at 2. Contemporary evidence of one such error, as an example, was shown at the hearing on the motion for summary judgment. *See* Hr'g Tr., Mar. 21, 2016, at Ct. Exs. 2, 3.

Plaintiff contends that she was never told of any problem with her performance. Mancher Aff., at Ex. 14 (Aug. 14, 2015 Dep. Tr. of Sherin Ahmed), at 196:17-25; Ahmed Decl., at ¶ 31. Rather, plaintiff contends that she was asked to work overtime and on weekends, which she took to mean that she was performing well, and that she never received any warnings or immediate discipline. Ahmed Decl., at ¶ 33. At the hearing plaintiff admitted latenesses. *See* Hr'g Tr., Mar. 21, 2016, at 16:20-22.

"On December 13, 2013 *after* [she] was terminated, [plaintiff] sent an email to Human Resources complaining of the discrimination that [she] was enduring." Ahmed Decl., at ¶ 35 (emphasis added). The e-mail has not been produced. There is evidence that plaintiff left a message with Karen DiSunno in the Human Resources department on the afternoon of December 13, 2013; Ms. DiSunno received the phone message when she arrived in the office Monday morning. *See* Mancher Aff., at Ex. 37.

Plaintiff testified at her deposition that she spoke with Mr. Figeroux and Russo on the morning of December 13, 2013 to complain about alleged discrimination, but there is no evidence to support this testimony, and plaintiff herself contradicts it in other documents, such as her declaration and response to Defendants' 56.1 statement. *Compare* Aff. of Tahanie A.

Aboushi, Esq. in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J., Jan. 24, 2016, ECF No. 45-1

("Aboushi Aff."), at Ex. D (Aug. 14, 2015 Dep. Tr. of Sherin Ahmed), at 228:17-233:19

(testifying that she reported discrimination) *with* Ahmed Decl., at ¶ 35 (reported discrimination

after being terminated) *and* Defs.' 56.1 Statement at ¶¶ 85-86 (indicating that the first time

plaintiff complained was after she was terminated).

On the morning of December 16, 2013, plaintiff e-mailed Karen DiSunno a complaint of

religious discrimination as follows:

> I would like to report religious discrimination matter from my
> manager Murren Russo since she fired me on the spot with out
> written warning before about my performance and she also called
> Arabs terrorist knowing the fact that I am arabic and she made a
> comment about my head cover before. I am going to the court to
> sue the bank.
>
> Thanks
>
> Sherin Ahmed [phone number redacted]

Mancher Aff., at Ex. 34 (Dec. 16, 2013 e-mail from Sherin Ahmed to Karen DiSunno) (errors in

original). The next day, in the afternoon of December 17, 2013, Karen DiSunno spoke with

plaintiff by telephone. Ms. DiSunno noted the following conversation about the need to

cooperate with the bank's investigation of discrimination claims, and the fact that plaintiff failed

to cooperate by improving her work:

> Today at 2:07 PM I contacted Sherin Ahmed regarding her
> suspension. I explained to Sherin, based on her not successfully
> passing her Orientation period she had the option to resign or to be
> terminated. I started to explain to Sherin the difference in the two
> statements but Sherin insisted she wanted to be terminated so she
> can use this information to go to the courts with. Sherin stated she
> was discriminated against and she was going to her Arabic Group
> to report this incident. I *re-iterated* to Sherin because of her
> substandard performance her employment with AFS has ended and
> if she wanted to pursue a discrimination claim, I *needed more*
> *detailed information* to proceed with an investigation. I asked

Sherin to provide me detailed information (dates, statements, location, co-workers present, etc.). During our conversation, Sherin stated she will email me the details. Within a few minutes of ending our conversation, I received an email from Sherin stating "*I thought it would be a better idea to investigate the discrimination matter when I file my case in the court* because the petition should have all the information."

At 2:54 PM I received a call from Sherin restating she was going to pursue a court case. Sherin also wanted to inform me the Tony Figeroux asked her to worked overtime and felt if she was such a poor performer why they would ask her to work overtime. She also claimed that Maureen denied her a 1/2 day unpaid off for religious observance. Sherin proceeded to state, she served Jury Duty on Friday, Oct 11 (her birthday) and sent Maureen a text message asking if she could take a 1/2 day unpaid off for religious observance and claims Maureen responded no because Lisa was not there. Sherin stated the saved the text messages, as a result I asked her to forward me the text messages (copies of emails attached).

Sherin proceeded to state, when she returned to the office she told Maureen she was selected for 2 cases but "Lied" to the courts to get out of serving. Sherin said, the first case was going to take 1 to 2 week and restated she lied to the court saying she could not serve because of her religion. I restated to Sherin "you lied to the courts to get out of jury duty/" and she responded yes and proceeded to state the second case was for Grand Jury and they were looking for volunteers. *I reiterated* to Sherin, her *employment with AFS ended because of her substandard performance and if she wanted to pursue her discrimination claim I needed the information in writing*. Sherin responded that the conversations took place in Maureen's office and "she is a soft talker" so no one over heard the conversation.

*Id.* at Ex. 37 (errors in original) (emphasis added). Ms. DiSunno sent a letter to plaintiff dated December 17, 2013 stating "In furtherance to our telephone conversation of this date, your employment as a Quality Control Analyst has been terminated effective today, December 17, 2013." Aboushi Aff., at Ex. J (Dec. 17, 2013 letter from Karen DiSunno to Sherin Ahmed).

## IV.     Law

### A.  Summary Judgment Standard

Summary judgment is appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 25 (E.D.N.Y. 2013) (citing *Viola v. Phillips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994)).  "The relevant governing law in each case determines which facts are material; '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor."  *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996)).  Inquiries about discrimination often depend upon the state of a plaintiff's mind, requiring at least some consistent, objective evidence.

> In discrimination cases, the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often *requires an assessment of individuals' motivations and state of mind*, matters that call for a "sparing" use of the summary judgment device because of juries' special advantages over judges in this area. Nonetheless, an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts.  She must come forth with evidence sufficient to allow a reasonable jury to find in her favor.  Moreover, *factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment* and that affidavit contradicts her own prior deposition testimony.

*Brown v. Henderson*, 257 F.3d 246, 251-52 (2d Cir. 2001) (internal quotation omitted) (emphasis added).

## B.     Title VII

### 1.  Disparate Treatment

Title VII protects individuals from discriminatory employment practices based on race, color, religion, sex, or national origin.  42 U.S.C. §§ 2000e-2(a)(1)-(2).  "*[I]ndividuals* are not subject to liability under Title VII."  *Patterson v. Cty. of Oneida, N.Y*, 375 F.3d 206, 221 (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam)) (emphasis added).

Suits under Title VII fall into two basic categories: "single issue motivation cases" and "dual issue motivation cases."  *Bickerstaff v. Vassar College*, 196 F.3d 435, 445 (2d Cir. 1999).  Single issue motivation cases involve solely the question of whether an impermissible reason motivated the adverse action, while dual issue motivation cases involve "both the issue of whether the plaintiff has proved that an impermissible reason motivated the adverse action and the additional issue of whether the defendant has proved that it would have taken the same action for a permissible reason . . . ."  *Id.* (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997)).

The nature of the case determines the framework under which the Title VII claims are evaluated.  If the plaintiff asserts that her case is one of single issue motivation, then her claim is subject to the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which initially imposes a *de minimus* burden of proof on the plaintiff.  *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) ("While the *prima facie* showing required of a plaintiff in an employment discrimination lawsuit is a very modest one, [defendant's] undisputed evidence of plaintiff's substandard job performance, confirmed by plaintiff's own admissions, preclude[s] his carrying even so minimal a burden.").

According to the *McDonnell Douglas* framework employed in single issue motivation cases, the plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she is competent to perform the job or is performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances supporting an inference of discrimination based on her membership in the protected class. *See McLee*, 109 F.3d at 134.

A plaintiff will only be considered to have been subjected to an adverse employment action if she endures a "materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). For the actions complained of to be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation omitted). "A material adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." *Parrish v. Sollecito*, 258 F. Supp. 2d 264, 269 (S.D.N.Y. 2003) (internal quotations omitted). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Sank v. City Univ. of N.Y.*, 219 F. Supp. 2d 497, 503 (S.D.N.Y. 2002) (internal quotation omitted).

Normal scheduling inconveniences, disciplinary notices, threats of disciplinary action and scrutiny of the employee's actions do not constitute adverse employment actions. *See, e.g.*, *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (holding that reprimands and threats of disciplinary action did not constitute adverse employment actions).

Once a plaintiff establishes a *prima facie* case of unlawful discrimination, the burden shifts to the defendant to supply a legitimate nondiscriminatory reason for the adverse action. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005). The burden is "one of

production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citation omitted). If the defendant meets its burden of production, the *McDonnell Douglas* framework drops out, and the plaintiff must show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (citation omitted).

If the plaintiff claims that the case involves dual issue motivation, then the burden-shifting framework outlined in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), is used to evaluate her claim. Under this framework, the plaintiff may establish a violation if she is able to prove by a preponderance of evidence that a protected characteristic played a motivating factor, though "direct evidence of discrimination is not required . . . ." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003). If plaintiff is able to meet her burden, the defendant must prove that it would have taken the same actions in the absence of an impermissible motive. *See, e.g.*, *Raskin v. Wyatt Co.*, 125 F.3d 55, 61 (2d Cir. 1997).

Plaintiff and defendants agree that the *McDonnell Douglas* rubric applies to this case. Defs.' Mem., at 11-12; Opp'n Mem., at 16. Plaintiff must therefore demonstrate a *prima facie* case and pretext.

### 2. Retaliation

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a).

> In the context of a motion for summary judgment, the plaintiff must first demonstrate a *prima facie* case of retaliation, after which the defendant has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action. If the defendant meets its burden, the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the

proffered legitimate reason merely a pretext for impermissible
retaliation.

*Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999), *abrogated on
other grounds by* 548 U.S. 53 (2006). A *prima facie* case of retaliation requires a showing of:
"(1) participation in a protected activity that is known to the defendant, (2) an employment
decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected
activity and the adverse decision." *Id.*; *see also Sumner v. U.S. Postal Service*, 899 F.2d 203,
208-09 (2d Cir. 1990) (plaintiff must show that "[s]he engaged in protected participation or
opposition under Title VII, that the employer was aware of this activity, that the employer took
adverse action against the plaintiff, and that a causal connection exists between the protected
activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse
employment action").

        To establish that a plaintiff's activity is protected under Title VII, a plaintiff "need not
prove the merit of [her] underlying discrimination complaint, but only that [she] was acting
under a good faith, reasonable belief that a violation existed." *Sumner*, 899 F.2d at 209 (citations
omitted). The filing of formal charges of discrimination are protected in addition to "informal
protests of discriminatory employment practices, including making complaints to management,
writing critical letters to customers, protesting against discrimination by industry or by society in
general, and expressing support of co-workers who have filed formal charges." *Id.* (citations
omitted). There must be a causal connection between the protected activity and the adverse
employment action, which can be established indirectly with circumstantial evidence, as by
showing that the protected activity "was followed by discriminatory treatment or through
evidence of disparate treatment of employees who engaged in similar conduct or directly through

evidence of retaliatory animus." *Id.* (citing *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987), and *Grant v. Bethlehem Steel*, 622 F.2d 43, 46 (2d Cir. 1980)).

A party wishing to bring a claim under Title VII in federal court must first file an administrative complaint with the EEOC and obtain a right to sue letter. "'A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge.'" *McClain v. N.Y. State Dept. of Taxation & Fin.*, No. 13-CV-3104, 2014 WL 4101517, at *5 (E.D.N.Y. Aug. 18, 2014) (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds*, Civ. Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071). A claim is "'reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)).

The Court of Appeals for the Second Circuit has provided the following guidance in determining whether the EEOC would be reasonably expected to explore an implied claim – that is to say, whether it would be expected to investigate a claim not explicitly raised:

> [A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving. *The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases.*

*Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citations omitted) (emphasis added).

Three situations establish that a claim may be found to be reasonably related:

> 1) where "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; 2) where the complaint is "one alleging retaliation by an employer against an employee for filing an EEOC charge"; and 3) where the complaint "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

*Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts*, 990 F.2d at 1402-03).

### 3. Hostile Work Environment

For a plaintiff to establish that she was subject to a hostile work environment in violation of Title VII, it must be shown:

> (1) that the workplace was permeated with discriminatory intimidation that was *sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and* (2) that a specific basis exists for *imputing the conduct that created the hostile environment to the employer*.

*Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotation omitted) (emphasis added). "Generally, the same standards apply to both race-based and sex-based hostile environment claims." *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 436 n.2 (2d Cir. 1999).

"The first element of a hostile work environment claim has both an objective and subjective component: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also [reasonably] subjectively perceive that [objective] environment to be abusive.'" *Petrosino*, 385 F.3d at 221 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

In assessing the atmosphere of the workplace, the court looks at the circumstances in their entirety. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," but "no single factor is required." *Id.* at 23. "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85. A few isolated instances of little weight are not enough:

> In order to meet [her] burden [of proving a hostile environment
> claim], the plaintiff must show more than a few isolated incidents
> of racial enmity; *there must be a steady barrage* of opprobrious
> racial comments; evidence solely of sporadic racial slurs does not
> suffice.

*Williams v. Cty. of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) (internal quotations omitted) (emphasis added). The plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have effectively altered the conditions of her working environment. *See, e.g.*, *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997); *Cruz*, 202 F.3d at 571 (concluding that plaintiff had adduced evidence that she and others were subjected to "blatant racial epithets on a regular if not constant basis" and that from this evidence "a jury reasonably might conclude that . . . [the] working environment . . . was hostile to [plaintiff] on the basis of her race").

A plaintiff must show that she was targeted for abusive treatment because of a protected status. *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasizing that Title VII prohibits only workplace harassment involving statutorily proscribed forms of discrimination); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is

axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.").

Favorable or equitable treatment of a protected group as a whole does not preclude a Title VII claim by a member of that group. *Connecticut v. Teal*, 457 U.S. 440, 454-55 (1982) ("Under Title VII, a racially balanced work force cannot immunize an employer from liability for specific acts of discrimination. . . . It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.") (citations omitted).

### C.     42 U.S.C. § 1981

Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of Section 1981. *Patterson*, 375 F.3d at 225. The significant differences, for purposes of the instant litigation, are as follows: (1) while Title VII claims are not cognizable against individuals, individuals may be held liable under section 1981 for certain types of discriminatory acts, including those giving rise to a hostile work environment; and (2) although in certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent, a plaintiff pursuing a claimed violation of section 1981 must show that the discrimination was intentional. *Id.* at 226; *see also Michaelidis v. Berry*, 502 F. App'x 94, 96 (2d Cir. 2012) ("a § 1981 claim requires proof of an intent to discriminate based on race").

### D. State Claims

Plaintiff brings state claims for discrimination and retaliation. *See* N.Y. Exec. Law § 296. Section 296(1)(a) of the New York Executive Law provides, in relevant part, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . race . . . to discharge from employment such individual." N.Y. Exec. Law § 296(1)(a).

Section 296(7) of the New York Executive Law provides that retaliation for complaining about discrimination is outlawed.

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

N.Y. Exec. Law § 296(7).

Plaintiff also asserts a claim pursuant to Section 296(6) of the New York Executive Law against Russo for aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct in violation of Section 296(7). This section provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6).

The analysis for a claim under Section 296 is identical to that for Title VII claims. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2004)); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999) (state law).

## V.     Application of Law to Facts

### A.  Disparate Treatment

A claim for disparate treatment under Title VII must center on the imposition of an adverse action motivated by an impermissible reason.  *Bickerstaff*, 196 F.3d at 445.  The only significant adverse action plaintiff suffered was her termination at the end of her probationary period.  Plaintiff has failed to satisfy her burden of establishing a *prima facie* case of disparate treatment because she has failed to allege or to present any evidence that her termination was motivated by discriminatory animus.  *See* Hr'g Tr., Mar. 21, 2016, at 4:10-5:10.  Plaintiff never reported any of the purported discriminatory conduct to Ms. Russo or anyone else until the day she was fired.  Defs.' 56.1 at ¶ 86.

Even if plaintiff's allegations did satisfy her *prima facie* burden, she fails to explain why Defendants' proffered justification for her termination was merely pretextual, the required final step of the *McDonnell Douglas* framework.  A supervisor testified about plaintiff's many mistakes, and Defendants produced contemporaneous written documentation of one instance where plaintiff made mistakes.  *See* Hr'g Tr., Mar. 21, 2016, at 18:19-24:5, Ct. Exs. 2 and 3.  Plaintiff also conceded latenesses.  *Id.* at 16:10-24.  Summary judgment for Defendants is warranted on her discrimination claims brought under Title VII and the New York State Human Rights Law against Astoria Bank.

Plaintiff's Section 1981 claim must also be dismissed.  A claim brought pursuant to section 1981 of title 42 requires a showing of intentional discrimination.  *See Patterson*, 375 F.3d at 226.  Neither the evidence nor the allegations made by plaintiff demonstrates an intent by Astoria Bank or any of its employees to discriminate against her.

Summary judgment is also appropriate on plaintiff's New York State Human Rights Law claim against Russo individually. There is no credible evidence that Russo aided or permitted any discriminatory conduct.

**B.**      **Retaliation**

Plaintiff's February 18, 2014 EEOC charge included her discrimination claim but not her retaliation claim. Defendants' contend that plaintiff's retaliation claim is not "reasonably related" to plaintiff's original claim filed with the EEOC. *See* Defs.' Mem., at 6-8. "'Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive.'" *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 246 (E.D.N.Y. 2013) (citations omitted). As in *Friel*, "nothing in the [EEOC] Charge provided the EEOC adequate notice to investigate possible retaliation," and "the claim of retaliation is not reasonably related to the allegations in the [EEOC] Charge." *Friel*, 947 F. Supp. 2d at 246 (citations omitted).

Summary judgment on plaintiff's retaliation claim is warranted for failure to exhaust her administrative remedies. *See* Hr'g Tr., Mar. 21, 2016, at 2:20-4:4.

**C.**      **Hostile Work Environment**

Plaintiff has not met her burden on her hostile work environment charge under Title VII. In order to make out a claim, plaintiff must show that "the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Petrosino*, 385 F.3d at 221 (citations omitted).

Here, plaintiff has identified only a few incidents, primarily stray comments from two specific individuals, over a three-month period as the foundation for her claim. *See supra* Part III.C. Her allegations – even if her contested testimony is accepted as true – are far from the

"steady barrage of opprobrious racial comments" that is required, and it does not appear that any of the comments she unsupportedly alleges were made rise to the level of "sufficiently severe to create a hostile work environment." *Williams*, 171 F.3d at 100-01; *Robinson v. Dibble*, 613 F. App'x 9, 13 (2d Cir. 2015).

The objective contemporaneous evidence demonstrates that there was no discrimination and no hostile work environment based on race, religion, or national origin.

## VI.     Conclusion

Defendants' motion for summary judgment is granted. The case is dismissed without costs or disbursements. The clerk is directed to enter judgment in favor of Defendants.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 31, 2016
Brooklyn, New York